# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| BAE SYSTEMS INFORMATION AND ELECTRONIC SYSTEMS INTEGRATION, INC., | : : : |
| Plaintiff, | : : |
| v. | : Civil Action No. 09-769 LPS : |
| AEROFLEX INCORPORATED and AEROFLEX PLAINVIEW, INC., | : **REDACTED VERSION** : : |
| Defendants. | : : |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
## MOTION FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

**DUANE MORRIS LLP**
Matt Neiderman (Del. Bar No. 4018)
Benjamin A. Smyth (Del. Bar. No. 5528)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801-1659

*Attorneys for Defendants Aeroflex
Incorporated and Aeroflex Plainview, Inc.*

*Of Counsel:*

Lonnie Coleman, Esq.
MOOMJIAN, WAITE & COLEMAN, LLP
100 Jericho Quadrangle, Suite 225
Jericho, New York  11753
Tel.: (516) 937-5900
Fax: (516) 937-5050

L. Norwood Jameson
Matthew C. Gaudet
DUANE MORRIS LLP
700 Atlantic Center Plaza
1180 West Peachtree Street
Atlanta, GA 30309
Tel.: (404) 253-9600
Fax:  (404) 393-1908

John M. Baird
DUANE MORRIS LLP
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
Tel.: (202) 776-7819
Fax: (202) 379-9850

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

I.     NATURE AND STAGE OF THE PROCEEDINGS ......................................................1

II.    SUMMARY OF ARGUMENT ......................................................................................3

III.   STATEMENT OF FACTS .............................................................................................4

       A.    Background .........................................................................................................4

       B.    The Claims of the '384 Patent.............................................................................5

       C.    ITT Documents Confirm that BAE's Claim Is Untenable ...................................7

       D.    BAE's Untenable Infringement Position .............................................................9

IV.    ARGUMENT.................................................................................................................10

       A.    Rule 11 Standard................................................................................................10

       B.    BAE Has Made Multiple Violations of Rule 11 by Unreasonably Pursuing
             its Patent Infringement Claim ...........................................................................12

             1.    BAE's Unreasonable Contention of Literal Infringement.........................12

             2.    BAE's Unreasonable Contentions Under the Doctrine of Equivalents ....14

             3.    Improper Purpose .....................................................................................17

       C.    The Court Should Sanction BAE and its Counsel................................................18

V.     CONCLUSION...............................................................................................................19

i

# TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. F. Hoffman-La Roche, Ltd.*,
    580 F.3d 1340 (Fed. Cir. 2009)....................................................................................14

*Antonious v. Spalding & Evenflo Cos.*,
    275 F.3d 1066 (Fed. Cir. 2002)..............................................................................10, 12

*Ario v. Underwriting Members of Syndicate 53 at Lloyds*,
    618 F.3d 277 (3d Cir. 2010)........................................................................................10

*Asyst Techs. v. Emtrak, Inc.*,
    402 F.3d 1188 (Fed. Cir. 2005)..................................................................................15

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*,
    73 F.3d 1573 (Fed. Cir. 1996)....................................................................................15

*Balthazar v. Atl. City Med. Ctr.*,
    137 Fed. Appx. 482 (3d Cir. 2005)............................................................................10

*Brubaker Kitchens Inc. v. Stephen M. Brown*,
    280 Fed. Appx. 174 (3rd Cir. 2008)..........................................................................10

*Schlaifer Nance & Co. v. Estate of Warhol*,
    194 F.3d 323 (2d Cir. 1999)........................................................................................17

*Carman v. Treat*,
    7 F.3d 1379 (8th Cir. 1993) ........................................................................................18

*Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*,
    424 F.3d 1293 (Fed. Cir. 2005)..................................................................................11

*Eltech Sys. Corp. v. PPG Indus., Inc.*,
    903 F.2d 805 (Fed. Cir. 1990)....................................................................................17

*F & G Research, Inc. v. Google Inc.*,
    2007 U.S. Dist. LEXIS 70072 ....................................................................................11

*Fabriko Acquisition Corp. v. Prokos*,
    536 F.3d 605 (7th Cir. 2008) ......................................................................................11

*Gaiardo v. Ethyl Corp.*,
    835 F.2d 479 (3d Cir. 1987)........................................................................................17

*Garr v. U.S. Healthcare, Inc.*,
    22 F.3d 1274 (3rd Cir. 1994) .............................................................................18

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*,
    339 U.S. 605 (1950)............................................................................................14

*Guy Del Giudice v. S.A.C. Capital Management, LLC*,
    2009 U.S. Dist. LEXIS 12664 (D.N.J. Feb. 19, 2009) ..........................................18

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*,
    706 F.Supp. 2d 713 (N.D. Tex. 2010) .................................................................11

*ICU Med., Inc. v. Alaris Med. Sys.*,
    558 F.3d 1368 (Fed. Cir. 2009).............................................................................12

*ICU Med., Inc. v. Alaris Med. Sys.*,
    2007 U.S. Dist. LEXIS 34467 (C.D. Cal. Apr. 16, 2007) ......................................10

*Judin v. United States*,
    110 F.3d 780 (Fed. Cir. 1997)...............................................................................10

*Litton Sys. v. Honeywell, Inc.*,
    140 F.3d 1449 (Fed. Cir. 1998).............................................................................12

*Loving v. Pirelli Cable Corp.*,
    11 F. Supp. 2d 480 (D. Del. 1998)........................................................................10

*Moore U.S.A. v. Std. Register Co.*,
    229 F.3d 1091 (Fed. Cir. 2000)........................................................................14-15

*Panduit Corp. v. HellermannTyton Corp.*,
    451 F.3d 819 (Fed. Cir. 2006)...............................................................................15

*Phonometrics, Inc. v. Econ. Inns. of Am.*,
    349 F.3d 1356 (Fed. Cir. 2003).............................................................................18

*Sage Prods. v. Devon Indus.*,
    126 F.3d 1420 (Fed. Cir. 1997).........................................................................15-16

*SciMed Life Sys. v. Advanced Cardiovascular Sys.*,
    242 F.3d 1337 (Fed. Cir. 2001).............................................................................15

*View Eng'g, Inc. v. Robotic Vision Sys.*,
    208 F.3d 981 (Fed. Cir. 2000)...............................................................................17

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)...............................................................................................14

iii

**Statutes**

35 U.S.C. § 271 ...................................................................................................................5

**Other Authorities**

2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 11.11[7][a] (3d ed. 2011).............12

Fed. R. Civ. P. 11 ................................................................................................. Passim

## I.    NATURE AND STAGE OF THE PROCEEDINGS

Defendants Aeroflex Incorporated and Aeroflex Plainview, Inc. (collectively, "Aeroflex") bring this motion seeking sanctions under Rule 11 against Plaintiff BAE Systems Information and Electronic Systems Integration, Inc. ("BAE") and its counsel for its baseless assertion of patent infringement against Aeroflex.

In its Complaint, BAE accuses Aeroflex of infringing United States Patent No. 5,742,384 ("the '384 Patent"). (D.I. 1, ¶¶ 45-52.) As explained in detail during the *Markman* process, the '384 Patent requires (among other things) a laser in a rotating housing. BAE has admitted that there is no laser in any rotating housing in the accused devices. BAE knew about this fact almost two years before it filed the Complaint because Aeroflex explained this in detail in a March 2008 letter to BAE. Following that letter, BAE then went silent until – on September 10, 2009 – the Department of Defense announced that its Common Infrared Countermeasure System ("CIRCM") procurement program "shall provide the sole development of laser-based infrared countermeasure systems for **all rotary-wing and tilt-rotor aircraft across the Department of Defense**." (D.I. 100-7, ITT 0218, emphasis added.) One month after that announcement, BAE ended its 19-month silence by filing the Complaint in this case, containing a knowingly frivolous assertion of patent infringement.

BAE has confirmed its baseless assertion throughout this litigation. In its March 1, 2010 infringement contentions, BAE asserted that a directed infrared countermeasures system developed by non-party ITT Corporation ("ITT") directly infringed the '384 Patent ("Accused System" or "ITT DIRCM System"), literally and under the doctrine of equivalents. (D.I. 103-1 and -2.) As in the Complaint, BAE accused Aeroflex of being liable for inducing or contributing to that direct infringement. (*Id.*)

1

On November 1, 2010, ITT produced documents delineating differences between the accused ITT DIRCM System and the '384 Patent, confirming that BAE's infringement claims were untenable.

On November 10, 2010, Aeroflex served interrogatory responses warning BAE that its patent infringement claim lacked merit and that Aeroflex intended to seek Rule 11 sanctions unless BAE withdrew it immediately. (Ex. A, Nos. 6-7.)[1]

On December 8, 2010, Aeroflex wrote to BAE detailing fundamental flaws in BAE's claim, asserting that the claim did not appear to be "warranted under existing law or a non-frivolous argument for new law" and warning that "if BAE refuse[d] to withdraw the patent infringement claim, [Aeroflex] [would] initiate Rule 11 proceedings." (Ex. B.)

BAE disclaimed any liability under Rule 11, in essence contending that so long as it could characterize the deficiency as a question of "claim construction," it gets a free pass on Rule 11. (Ex. C.) Aeroflex then informed the Court that it would seek Rule 11 sanctions. (D.I. 93, Letter Brief to J. Stark, Jan. 25, 2011, 3; Hr'g. Tr. 9:20-10:7; 13:20-14:20, Feb. 1, 2011.) BAE argued that claim construction was necessary to decide the Rule 11 issue, forcing the expense of Markman and summary judgment proceedings. (Hr'g. Tr. 5:10-6:12, Feb. 1, 2011).

To date, BAE has not withdrawn its untenable claim of infringement, culminating with oral argument heard May 25, 2011.

---

[1] Unless otherwise indicated, all exhibits to the brief refer to the exhibits to the Declaration of Matt Neiderman served in support of this Motion.

## II.    SUMMARY OF ARGUMENT

The '384 Patent requires (among other things) a laser in a rotating housing.[2]  BAE bases its Complaint for patent infringement on the assertion that a DIRCM system supplied by ITT directly infringes the '384 Patent, and that Aeroflex has induced or contributed to that direct infringement by ITT.  BAE has admitted, however, that the accused system does not have a laser in a rotating housing, as it stated in a brief to this Court that "the [accused] gimbal assembly does not include a laser in the rotating part of its housing.  Instead, the accused system has a gimbal and a laser connected together by fiber optic cable . . . ." (D.I. 141, at 1.)  Indeed, BAE knew this a year and a half before it filed the case, when Aeroflex's counsel responded to BAE's letter regarding the '384 Patent by explaining that "[t]he housing in the Aeroflex device does not rotate as required by the claim of the BAE patent."  (Ex. D.)

In sum, BAE knew that its patent infringement claim is foreclosed by settled law before it filed the Complaint, and "claim construction" does not allow a party to transform a claim into its antonym.  It is apparent that BAE is using the claim for an improper purpose, including increasing litigation costs, harassing Aeroflex and gaining strategic advantage in bidding on a major contract with the U.S. Government.  Despite warnings by Aeroflex, BAE refuses to withdraw the patent infringement claim.  BAE is pursuing a claim in violation of Federal Rule of Civil Procedure 11, and sanctions are warranted and appropriate.

---

[2] Claim 1 of the '384 Patent is the only independent claim in the patent.  (D.I. 1-1, 16:14-18:19.) Thus, the limitations in claim 1 are present in all the claims in the patent and to infringe the '384 Patent, or any asserted claim of the patent, one must, at a minimum infringe claim 1.   All of the claim limitations discussed in this motion are recited in claim 1, and because all of the claims in the patent have those limitations, we refer simply to the "Claims".

## III.     STATEMENT OF FACTS

### A.     Background

This action relates to directed infrared countermeasure ("IRCM") systems used to defend military aircraft from an infrared guided missile, i.e. a heat seeking missile, by pointing a focused beam of light onto the missile to jam the missile's guidance system. (*See*, *e.g.*, D.I. 1 ¶¶ 9-11; D.I. 101 ¶¶ 5-7.)[3]

From 1996 to 2003, Aeroflex developed gimbals for IRCM systems with the successive patent owners of the '384 Patent.  (*See* D.I. 173, 3-6.)  On December 21, 2007, over a decade later, BAE sent Aeroflex a letter, which, for the first time, identified the '384 Patent ("BAE December 21, 2007 Letter"). (D.I. 176, Ex. 23.)  Tellingly, during Aeroflex's work with each patent owner, none had identified the '384 Patent or even suggested that the patent covered any of the designs created by Aeroflex.  (*See* Ex. A, 6, 8-9, 12.)

In response, counsel for Aeroflex sent BAE a letter on March 5, 2008 ("Aeroflex March 5, 2008 Letter") explaining that the Aeroflex gimbal did not infringe the '384 Patent for multiple reasons, including that "[t]he housing in the Aeroflex device does not rotate as required by the claim of the BAE patent."  (Ex. D, 2.)  BAE acquiesced and did not raise the patent with Aeroflex again until filing this Action almost two years later.  (Ex. A, 6, 8-9.)

---

[3] For an extensive discussion of the history of Aeroflex and ITT development efforts, see Aeroflex's Opening Brief in Support of its Motion for Summary Judgment (D.I. 99), its Supplemental Opening Brief (D.I. 118), its Reply Brief (D.I. 135), its Answering Brief in Opposition to BAE's Motion to Strike (D.I. 136), the Deposition of Kathleen Thornton, March 3, 2011, and the Hearing Transcript of May 25, 2011, 60:15-109:2, together with their supporting affidavits and documents.  All of the foregoing occurred in the period since Aeroflex requested that BAE withdraw its patent infringement claim pursuant to Rule 11.

On September 10, 2009, the Under Secretary of Defense discussed its Common Infrared Countermeasure System ("CIRCM") procurement program, announcing that "CIRCM shall provide the sole development of laser-based infrared countermeasure systems for **all rotary-wing and tilt-rotor aircraft across the Department of Defense**." (D.I. 100-7, ITT 0218, emphasis added.)  BAE asserts that "[t]he CIRCM program with the Army is expected to be a 20 year, **multi-billion dollar program**." (D.I. 160, Ethier Decl. ¶ 10, emphasis added.)  One month after the DoD announcement, BAE brought this action, accusing Aeroflex of inducing patent infringement under 35 U.S.C. § 271(b) and/or being liable as a contributory infringer under 35 U.S.C. § 271(c). (D.I. 1, ¶¶ 45-52.)[4]

**B.      The Claims of the '384 Patent**

Claim 1 defines a straightforward structure, using simple terms:

*1.       A laser transmission system comprising:*

*a semiconductor laser and lens means for focusing light emitted by the laser to provide a transmitted beam;*

***a housing enclosing the laser*** *and the lens means, and **a rigid support for positioning the laser** and the lens means **within the housing**;*

*means for **rotating the housing** about an axis for scanning the beam in azimuth; and*

***transmit mirror means positioned by the support means within the housing*** *for scanning the beam in elevation.*

(D.I. 1-1, 16:13-23, emphasis added.)  As described in detail in the *Markman* process, the plain language of each claim requires that a laser be in a housing that rotates.  (*Id.*; *see also* Aeroflex's

---

[4] Aeroflex is not accused of direct infringement because, among other things, the claims of the '384 Patent require a "semiconductor laser", which Aeroflex does not provide.

Opening Claim Construction Brief, D.I. 122, 1-3.)[5]  Likewise (and as also explained throughout the *Markman* process), the written description and drawings of the '384 Patent elaborates and emphasizes the structure precisely defined in the claims, repeatedly emphasizing the claimed concept of a laser mounted inside a rotating housing.  For example, the specification begins: "[t]his invention relates to . . .  an emitter constructed as a semiconductor laser and mounted for rotation within a gimbal." (D.I. 1-1, 1:5-9.)[6]  The same point is also made in the stated reasons for allowing the patent by the Patent Office:

> The present application (claim 1) recites both "a rigid support means for positioning the laser and lens means within the housing" and a "transmit mirror means positioned by the support means".  This structure is not taught or suggested by Cain et al or the rest of the prior art.

(D.I. 123-1 Ex. B, 2.) [7]

---

[5] For an extensive discussion of the Asserted Claims, patent specification, prior art, prosecution history and related technology, see Aeroflex's Opening Claim Construction Brief, (D.I. 122), Answering Claim Construction Brief (D.I. 143), Technology Tutorial DVD (D.I. 139), and Hearing Transcript of May 25, 2011, 129:10-173:7, together with their supporting affidavits and documents.

[6] Likewise, and as also explained throughout the *Markman* process, the specification repeatedly emphasizes the claimed concept of a rigid support that positions the laser and its associated optics within the gimbal, referring to the arrangement as an "optical bench".  The Summary of Invention states: "[a] common gimbal mounting of both laser transmitter and receiver with their associated optics for illumination and detection of a missile is accomplished by use of a central rigid base plate which supports the transmitter . . . .  The rigid base plate serves as an optical bench for insuring precise optical measurements . . . ." (D.I. 1-1, 2:2-8; *see also* Abstract.)  The claimed rigid support created an "optical bench" within the gimbal despite the slewing rotation of IRCM gimbals.  (D.I. 1-1, 15:30-43).

[7] Consistent with the findings of the Patent Office, it was known at least as early as the March 28, 1994 issue of Aviation Week and Space Technology to mount lasers remotely from an IRCM gimbal: "[t]he compact, lightweight laser is not mounted in the jam head. Laser energy is routed from where it is generated to the jam head via a series of mirrors." (D.I. 123, Ex. A, at 57; *see also* Aeroflex's Opening Claim Construction Brief, D.I. 122 at 4-5 and Aeroflex Technology Tutorial, discussing the prior art ATIRCM system.)

## C.    ITT Documents Confirm that BAE's Claim Is Untenable

As discussed above, Aeroflex's March 5, 2008 Letter identified obvious differences between the Claims and the Aeroflex gimbal.  Indeed, BAE has been familiar with the structure of the Accused System since at least the time it wrote the BAE December 21, 2007 Letter, and was, of course, well aware of structural differences between the ITT DIRCM System and the structure claimed and disclosed in the '384 Patent.  This point has now been admitted by BAE: "the [accused] gimbal assembly does not include a laser in the rotating part of its housing.  Instead, the accused system has a gimbal and a laser connected together by fiber optic cable . . . ." (D.I. 141, at 1.)

The parties' mutual understanding is confirmed by documents ITT produced on November 1, 2010, confirming that the ITT DIRCM System does not enclose a laser within the Aeroflex gimbal.  (*See, e.g.,* D.I. 100-2; D.I. 100-5.)  For example, one ITT document shows photographs of the ITT DIRCM System, with the laser (bottom left), and the Pointer/Tracker (top right) being completely independent line replaceable units ("LRU's") connectable by the green fiber optic cable (shown coiled in the photo on left side):



(D.I. 100-5 at ITT (AEO) 00121.)  Indeed, BAE's counsel effectively admitted that there is no infringement: "[i]n other words, ITT has done nothing more than take the system claimed in BAE Systems' patent, relocate the laser in a separate housing and connect the two housings with fiber optic cable."  (Ex. C, 4.)





)[8]

### D.    BAE's Untenable Infringement Position

In its March 1, 2010 infringement contentions, BAE provided the basis for its patent infringement count in its Complaint, making the frivolous assertion of literal infringement that somehow the claim can encompass something dubbed by BAE's litigation counsel as a "two-part housing" in which (i) only one "part" rotates, and (ii) the other, non-rotating "part" has the laser. (D.I. 103-2, 2-5).  Throughout the *Markman* process, BAE continued this baseless position in its claim constructions and specifically asserted that the Accused System literally infringed. (*See, e.g.*, D.I. 141, 1.)  BAE's position is frivolous, for the reasons described in the *Markman* process.

BAE also provided the basis for its assertion of infringement under the "doctrine of equivalents," arguing that a system in which a laser is in a separate housing that does not rotate is somehow "insubstantially different" from a rotating housing that encloses both the semiconductor laser and lens means.  (D.I. 103-2, 2-6.).   BAE advocated its doctrine of equivalents theory to the Court in its Markman briefing.  Specifically, in Plaintiff's Answering Claim Construction Brief, BAE admitted "the [accused] gimbal assembly does not include a

---

[8] Again, Aeroflex detailed these differences in its Rule 11 warning letter to BAE of December 8, 2010.  (Ex. B.)

laser in the rotating part of its housing.  Instead, the accused system has a gimbal and a laser connected together by fiber optic cable . . . ." (D.I. 141, at 1.)  BAE has continued to rely on its doctrine of equivalents theory by pressing its patent infringement claim through summary judgment and Markman proceedings, all after Aeroflex raised its Rule 11 concerns in discovery answers, correspondence and before the Court.  Indeed, when notified of Aeroflex's intention to seek relief under Rule 11, BAE cited each of these faulty theories and advised that it would "not withdraw [its] patent infringement contentions."  (Ex. E.)

## IV.    ARGUMENT

Sanctions are warranted because BAE has asserted and continued to advocate an untenable patent infringement claim.  Below, Aeroflex briefly discusses the applicable Rule 11 standards, then describes BAE's unreasonable conduct, and finally requests sanctions against BAE and its counsel.

### A.    Rule 11 Standard

Rule 11 requires "[e]very pleading, written motion, and other paper" to be signed "by at least one attorney of record."  Fed. R. Civ. P. 11(a).  By "signing, filing, submitting, or later advocating" such a paper, the attorney "certifies that to the best of the [attorney's] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery

Fed. R. Civ. P. 11(b)(1)-(3).  When applying Rule 11 in patent cases, the regional law of the circuit applies.  *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002).  In the Third Circuit, conduct violates Rule 11 if it fails to be "objectively reasonable under the circumstances."  *Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 297 (3d Cir. 2010); *Brubaker Kitchens Inc. v. Stephen M. Brown,* 280 Fed. Appx. 174, 185 (3rd Cir. 2008).  Frivolous assertions of patent infringement warrant sanctions.  *See ICU Med., Inc. v. Alaris Med. Sys.*, No. SA CV 04-689, 2007 U.S. Dist. LEXIS 34467, *10-11 (C.D. Cal. Apr. 16, 2007), *aff'd*, 558 F.3d 1368 (Fed. Cir. 2009); *Judin v. United States*, 110 F.3d 780, 784-85 (Fed. Cir. 1997).

Rule 11 obligations continue to apply after signing or filing a paper.  "[S]anctions are proper when, *inter alia*, a party 'insists upon a position after it is no longer tenable.'"  *Balthazar v. Atl. City Med. Ctr.*, 137 Fed. Appx. 482, 490 (3d Cir. 2005).  "A litigant's obligations with respect to the contents of [papers filed with the court] are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit."  *Loving v. Pirelli Cable Corp.*, 11 F. Supp. 2d 480, 493 (D. Del. 1998) (quoting the 1993 Advisory Committee Notes to Rule 11); *see also Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 610 (7th Cir. 2008) ("[Plaintiff] continued to advocate a claim that had no legal basis and refused to alter or withdraw it when that deficiency was pointed out to it.  That conduct warranted Rule 11 sanctions.").

Continued litigation of an untenable patent infringement claim warrants sanctions.  *F & G Research, Inc. v. Google Inc.*, 2007 U.S. Dist. LEXIS 70072, at **38-50 (S.D. Fla. Sept. 21, 2007) (plaintiff in patent infringement litigation sanctioned under Rule 11 where, among other

things, the defendant could not have infringed the patent at issue and the plaintiff "continue[d] to litigate the matter" despite multiple warnings "that its legal theories were baseless"); *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 706 F.Supp. 2d 713, 736 (N.D. Tex. 2010) (imposing Rule 11 sanctions where, among other things, party pursued its infringement claims after it became clear those claims had no merit).

### B.    BAE Has Made Multiple Violations of Rule 11 by Unreasonably Pursuing its Patent Infringement Claim

BAE has pursued its infringement claim despite knowing that ITT's DIRCM System[9] does not incorporate a laser in a rotating housing.  Looking at BAE's conduct objectively under the circumstances, BAE has unreasonably advocated a patent infringement claim unwarranted under existing law and unsupported by factual evidence.  Further, in violation of Rule 11(b)(1), given the unmeritorious nature of the patent infringement claim, it is apparent that BAE is using the claim for an improper purpose, including increasing litigation costs, harassing Aeroflex, and gaining strategic advantage in bidding on a major contract with the U.S. Government.  Any one of these violations, by itself, warrants sanctions.[10]

### 1.    BAE's Unreasonable Contention of Literal Infringement

BAE has unreasonably advanced a frivolous literal infringement contention.  It is black letter law that "[l]iteral infringement requires that the accused device contain each limitation of

---

[9] BAE's Complaint alleges Aeroflex is liable as an indirect infringer.  That allegation relies upon the direct infringement of the ITT DIRCM System, because it is well settled that there can be no indirect infringement without the existence of a direct infringement. *Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005).

[10] "[T]he rule makes clear that sanctions may be based on a single invalid legal or factual theory, even if other asserted theories are valid." *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1075 (Fed. Cir. 2002) ("Each claim takes up the time of the legal system and the opposing side. A single claim . . . may occasion the expenditure of hundreds or thousands of hours, as opposing counsel try to verify or refute the allegations and theories.").

the claim exactly; any deviation from the claim precludes a finding of literal infringement." *Litton Sys. v. Honeywell, Inc.*, 140 F.3d 1449, 1454 (Fed. Cir. 1998).

BAE has pressed its untenable literal infringement theory implicitly in the Complaint and explicitly in BAE's subsequent advocacy of the pleading. BAE insisted that the Rule 11 issue boiled down to a question of claim construction (Hr'g. Tr., 5:10-6:12; 17:8-19, Feb. 1, 2011), but the *Markman* case and it progeny do not create an exception to Rule 11. "Because claim construction is a matter of law, an attorney's proposed claim construction is subject to the Rule 11(b)(2) requirement that all legal arguments be nonfrivolous." *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002); *see also ICU Med., Inc. v. Alaris Med. Sys.*, 558 F.3d 1368, 1380-81 (Fed. Cir. 2009) (affirming Rule 11 sanctions where district court concluded that plaintiff had advocated in favor of a "frivolous construction" of the patent at issue and pursued baseless claims of patent infringement). In sum, the fact that BAE has attempted to frame its frivolous assertions as a mere dispute about "claim constructions" cannot remove the teeth from Rule 11. As described at length in the Markman process, the existing law of claim construction does not allow a patentee to ignore the language of its patent's claims. *See* 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 11.11[7][a] (3d ed. 2011) (a legal contention "is not warranted by existing law if it is based on legal theories that are plainly foreclosed by well-established legal principles and authoritative precedent.").

In contrast to the claim language, the ITT documents confirm that the Accused System does not employ a device having a rotating housing that encloses a laser. It is not colorable to assert that the presence of a flexible cable between the laser and the gimbal somehow transforms the two structures into one. But even if that sleight of hand worked, there is still no rotating

structure that encloses the laser.  In short, the laser does not rotate, and cannot possibly be covered by this patent.

Likewise, a flexible cable is the antithesis of a "rigid support" claimed and elaborated upon in the specification under the concept of an "optical bench".  It is undisputed, that the laser module in ITT's DIRCM System is separate from the gimbal.  As the laser is connected by flexible fiber optic cable, any rigid support associated with the laser module is completely independent of any rigid support associated with the transmit mirror.  The rigid support of the claims simply cannot encompass separate, disconnected structures, one rotating on a gimbal and the other in a fixed position in a separate laser module.  BAE's theory of infringement would read out of the claim language requiring the laser to be within the same housing for which there is a means for rotation and the claim limitation that the laser be mounted to the same rigid support as the transmit mirror means.

### 2.    BAE's Unreasonable Contentions Under the Doctrine of Equivalents

In violation of Rule 11(b)(2) and (b)(3), BAE has unreasonably asserted frivolous legal contentions and unsupported factual contentions under the doctrine of equivalents.  The doctrine of equivalents cannot save BAE's patent infringement claim.  Under the doctrine of equivalents, "[a]n accused device that does not literally infringe a claim may still infringe" if the differences between the accused device and the claim are "insubstantial." *Amgen Inc. v. F. Hoffman-La Roche, Ltd.*, 580 F.3d 1340, 1382 (Fed. Cir. 2009).  The doctrine of equivalents is meant to prevent making "**unimportant and insubstantial** changes and substitutions in the patent which, **though adding nothing**, would be enough to take the copied matter outside the claim, and hence outside the reach of the law." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607 (1950)(emphasis added).  Many claim limitations warrant little, if any, range of equivalents: "[i]f our case law on the doctrine of equivalents makes anything clear, it is that all claim

limitations are not entitled to an equal scope of equivalents. Whether the result of the All Limitations Rule . . . or the inherent narrowness of the claim language . . ., many limitations warrant little, if any, range of equivalents." *Moore U.S.A. v. Std. Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) (internal citations omitted).    Under well-settled principles, the claim language itself forecloses abusing the doctrine of equivalents as advocated by BAE.

Under the all elements rule, the doctrine of equivalents must not entirely vitiate a claim limitation.  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).  The Supreme Court foreclosed such abuse:

> Each element contained in a patent claim is deemed material to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole.  It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.

*Id.*  "[I]f a theory of equivalence would entirely vitiate a particular claim element, partial or complete [summary] judgment should be rendered by the court . . ." *Id.* at 39 n.8.

Accordingly, the doctrine of equivalents does not extend to subject matter "specifically excluded" by the inherent narrowness of the claim language at issue.[11]  In *Asyst Technologies, Inc. v. Emtrak, Inc.*, the Federal Circuit found:

> To hold that 'unmounted' is equivalent to 'mounted' would effectively read the 'mounted on' limitation out of the patent. . . . This case falls within both [the all elements rule] and its corollary, the 'specific exclusion' principle, since the term 'mounted' can fairly be said to specifically exclude objects that are 'unmounted.'

*Asyst Techs. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005); *see also Panduit Corp. v. HellermannTyton Corp.*, 451 F.3d 819, 830 (Fed. Cir. 2006) ("Claim 1 of the … patent requires

---

[11]  *See SciMed Life Sys. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1346 (Fed. Cir. 2001) (noting the close kinship of the "all elements rule" and the "specific exclusion" principle); *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1582 (Fed. Cir. 1996) ("specific exclusion" principle is "a corollary to the 'all limitations' rule").

an opening in an abutment. . . through which wires may pass . . . . To extend the scope of the claim to encompass an accused device in which wires bypass the abutment portion altogether would necessarily read the 'opening' limitation out of the claim."). Likewise, it is well settled that doctrine of equivalents cannot be used to extend to the antithesis of the claim language:

> [T]o allow what is undisputedly a minority (i.e., 47.8%) to be equivalent to a majority would vitiate the requirement that the 'first and second longitudinal strips of adhesive . . . extend the majority of the lengths of said longitudinal marginal portions.' . . . [I]t would defy logic to conclude that a minority -- the very antithesis of a majority -- could be insubstantially different from a claim limitation requiring a majority, and no reasonable juror could find otherwise.

*Moore U.S.A. v. Std. Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000).[12]

The claim requires a laser in a rotating housing, and the inherent narrowness of the claim language cannot be rewritten. It is frivolous to contend that claim limitations, which repeatedly recite structure be "within the housing" could be insubstantially different to a structure where the objects are the antithesis, *i.e.*, **not** "within the housing." It is frivolous to contend that claims to

---

[12] Similarly, the Federal Circuit has explained that the doctrine of equivalents cannot be used to expand claim scope against the public when the patentee presents simple structural claim limitations to the Patent Office, failing to negotiate broader claims, despite a clear opportunity to do so. *Sage Prods. v. Devon Indus.*, 126 F.3d 1420, 1425 (Fed. Cir. 1997). Here, like *Sage Products*, the Claims define:

> a relatively simple structural device. A skilled patent drafter would foresee the limiting potential of the [claim language]. No subtlety of language or complexity of the technology, nor any subsequent change in the state of the art, such as later-developed technology, obfuscated the significance of this limitation at the time of its incorporation into the claim.

(*Id.*) If BAE desired broad patent protection for any IRCM system "that performed a function similar to its claimed system, it could have sought Claims with fewer structural encumbrances." (*Id.*) Had BAE done so, then "the Patent and Trademark Office (PTO) could have fulfilled its statutory role in helping to ensure that exclusive rights issue only to those who have, in fact, contributed something new, useful and unobvious." (*Id.*) Instead, BAE "left the PTO with manifestly limited claims that it now seeks to expand through the doctrine of equivalents." (*Id.*) "However, as between the patentee who had a clear opportunity to negotiate broader claims but did not do so, and the public at large, it is the patentee who must bear the cost of its failure to seek protection for this foreseeable alteration of its claimed structure." (*Id.*)

"a rigid support for positioning the laser . . . within the housing" need not be in the housing. Likewise, it is frivolous to contend that claim language "transmit mirror means **positioned by the support means within the housing**" could be insubstantially different to a transmit mirror means positioned by **any** support, in **any** housing, and need not even be affixed to whatever is supporting the laser.

BAE's view appears to be that the doctrine of equivalents is a license to assert any patent against any device, thereby foisting upon competitors the burden and expense of patent litigation. Such abuse of the doctrine of equivalents is plainly foreclosed by the law and by the language used in the claims of the '384 Patent.

### 3. Improper Purpose

Finally, in violation of Rule 11(b)(1), BAE has persisted with its untenable patent infringement claim for an improper purpose. As discussed above, BAE filed this Complaint after acquiescing for 19 months to a letter by Aeroflex describing the fatal flaws in the assertion of the '384 Patent. The Complaint was not promoted by the merits, but by the Department of Defense's announcement relating to the CIRCM procurement that BAE asserts is worth billions of dollars. That BAE's actions come at a time when it is in competition with ITT for a major award only reinforces the conclusion that sanctions are appropriate to prevent "improper purpose" under Rule 11(b)(1).

Given the frivolous nature of the claim, and the backdrop of monetary incentive to knock out competition from ITT, it is apparent that BAE is pursuing its claim for an improper purpose. An improper purpose may be inferred from a refusal to withdraw a baseless infringement claim. *C.f. Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999) (indicating that, in the context of 28 U.S.C. § 1927, an improper purpose may be found to exist where a claim is "completely without merit"); *see also Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d

17

805, 811 (Fed. Cir. 1990) ("[When] the patentee is manifestly unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith. . .")

As BAE well knows, its continued pursuit of the patent infringement claim is needlessly imposing major costs on Aeroflex. "A patent suit can be an expensive proposition. Defending against baseless claims of infringement subjects the alleged infringer to undue costs – precisely the scenario Rule 11 contemplates." *View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 986 (Fed. Cir. 2000). The patent infringement claim was dead on arrival, and the only effect would be to burden a competitor's vendor and attempt to tarnish the competitor's bid to the Department of Defense. Such tactics warrant sanctions "to curb abusive litigation tactics and misuse of the court's process." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987).

### C.    The Court Should Sanction BAE and its Counsel

For the foregoing reasons, Aeroflex requests sanctions against BAE and BAE's counsel.[13] Aeroflex requests its attorneys fees and costs in bringing this Rule 11 motion. Fed. R. Civ. P. 11(c)(2). Aeroflex further requests its attorneys fees and costs in defending the patent infringement claim, including fees and costs related to summary judgment, claim construction and discovery related to the patent infringement claim. Fed. R. Civ. P. 11(c)(4). *See Phonometrics, Inc. v. Econ. Inns. of Am.*, 349 F.3d 1356 (Fed. Cir. 2003) (affirming order awarding defendant of attorneys' fees and costs under Rule 11 where plaintiff pursued its claim

---

[13] Rule 11 authorizes the Court to impose various sanctions against BAE or its attorneys. *See* Fed. R. Civ. P. 11(c)(1) (where Rule 11(b) has been violated, "the court may impose an appropriate sanction on any attorney, law firm or party that violated the rule or is responsible for the violation.") Under Rule 11, however, "[a] sanction . . . must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). As to represented parties, monetary sanctions should not be imposed for violations of Rule 11(b)(2) alone. Fed. R. Civ. P. 11(c)(5)(A).

of patent infringement in the face of several Federal Circuit decisions that made clear plaintiff's claim was "untenable").

Finally, Aeroflex requests dismissal with prejudice of the patent infringement count to prevent further waste of resources on a patent infringement count that can only be considered frivolous. *See*, *e.g.*, *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1278, 1281 (3rd Cir. 1994) (affirming district court's dismissal of complaint); *Carman v. Treat*, 7 F.3d 1379, 1382 (8th Cir. 1993) (affirming dismissing prison inmate's baseless action pursuant to Rule 11); *Guy Del Giudice v. S.A.C. Capital Management, LLC,* 2009 U.S. Dist. LEXIS 12664, *23, *39. (D.N.J. Feb. 19, 2009). Indeed, in addition to the multiple warnings detailed herein, if this motion is filed, BAE will have had the formal notice and opportunity to withdraw the patent infringement claim voluntarily pursuant to the 21 day safe harbor period. Fed. R. Civ. P. 11(c)(2).

## V.    CONCLUSION

For the foregoing reasons, Aeroflex respectfully requests that the Court grant its Motion for Sanctions.


Dated:  August 1, 2011                   **DUANE MORRIS LLP**

                                         /s/ Matt Neiderman
                                         Matt Neiderman (Del. Bar No. 4018)
                                         Benjamin A. Smyth (Del. Bar. No. 5528)
                                         222 Delaware Avenue, Suite 1600
                                         Wilmington, DE 19801-1659
                                         Tel: (302) 657-4900
                                         Fax: (302) 657-4901

                                         *Attorneys for Defendants Aeroflex*
                                         *Incorporated and Aeroflex Plainview, Inc.*

19

*Of Counsel:*

Lonnie Coleman, Esq.
MOOMJIAN, WAITE & COLEMAN, LLP
100 Jericho Quadrangle, Suite 225
Jericho, New York  11753
Tel.: (516) 937-5900
Fax: (516) 937-5050

L. Norwood Jameson
Matthew C. Gaudet
DUANE MORRIS LLP
700 Atlantic Center Plaza
1180 West Peachtree Street
Atlanta, GA 30309
Tel.: (404) 253-9600
Fax:  (404) 393-1908

John M. Baird
DUANE MORRIS LLP
505 9th Street, N.W., Suite 1000
Washington, DC 20004-2166
Tel.: (202) 776-7819
Fax: (202) 379-9850