IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BAE SYSTEMS INFORMATION AND ELECTRONIC SYSTEMS INTEGRATION INC., | : : : | |
| Plaintiff, | : : | |
| v. | : : | Civ. No. 09-769-LPS |
| AEROFLEX INCORPORATED and AEROFLEX PLAINVIEW, INC., | : : : | |
| Defendants. | : : | |

## MEMORANDUM ORDER

At Wilmington this 23rd day of July, 2012:

Pending before the Court is the Motion for Sanctions under Federal Rule of Civil Procedure 11 ("Sanctions Motion") (D.I. 245) filed by Defendants Aeroflex Incorporated and Aeroflex Plainview, Inc. (collectively, "Aeroflex"). Having reviewed the papers filed in connection with the Sanctions Motion, and for the reasons explained below, the Court will DENY Aeroflex's motion.[1]

### I. RELEVANT BACKGROUND

The Court provides only the limited background necessary to explain its ruling. Additional background can be found in: (i) the Court's August 2011 order (D.I. 247) ("Noninfringement Order") and opinion (D.I. 248) ("Noninfringement Opinion"), granting Aeroflex's motion for summary judgment on BAE's patent infringement claim pursuant to 28

---

[1] In relation to the Sanctions Motion, Plaintiff BAE Systems Information and Electronic Systems Integration, Inc. ("BAE") filed a Motion for Leave to File a Surreply (the "Leave Motion") (D.I. 291), which Aeroflex does not oppose (see D.I. 299 at 2-3). Plaintiff's Leave Motion (D.I. 291) is therefore GRANTED. The proposed brief attached as Exhibit A to Plaintiff's Leave Motion is hereby deemed filed.

U.S.C. § 1498; and (ii) the Court's May 2012 order (D.I. 449) ("Limitations Order"), granting Aeroflex's summary judgment motion on BAE's remaining state law claims based on statute of limitations grounds.

In its Noninfringement Opinion, the Court provided the following relevant pre-suit background:

> BAE operates in the global defense, security, and aerospace industry and develops and supports infrared countermeasure ("IRCM") defense technologies for use on military and commercial vehicles on both land and air. BAE owns the rights in [U.S. Patent No. 5,742,384 (the "'384 patent")]. Aeroflex . . . manufactures certain components of defense systems and subcontracts with defense contractors, including BAE.
>
> Both BAE and Aeroflex are involved in the production of IRCM systems for U.S. military aircraft. Low-flying military aircraft are susceptible to certain kinds of missiles, known as heat-seeking missiles. In response to these heat-seeking missiles, aircraft are equipped with defensive mechanisms that can defend the aircraft from missile attack. IRCM systems detect energy from incoming missiles and, using infrared technology, are able to throw the missiles off course.
>
> . . .
>
> Non-party ITT Corporation ("ITT") . . . is a direct competitor of BAE and, like BAE, serves as a defense contractor for the U.S. government. In 2003, ITT began working toward developing its own IRCM system; and, in 2005, ITT subcontracted with Aeroflex to develop a gimbal specification to meet ITT's requirements.[2] Subsequently, Aeroflex provided to ITT a gimbal assembly in April 2006, in April 2009, [and] in May 2009 . . . . Aeroflex contends it provided these gimbals to ITT with the understanding that they were being used for ITT's IRCM program for U.S. military aircraft.

---

[2] "A gimbal assembly is a device having one or more axes of rotation that allow an object mounted on the gimbal assembly to move freely in various directions." Noninfringement Opinion at 3.

2

(Noninfringement Op. at 1-3) (internal citations omitted)

On October 14, 2009, BAE filed a six-count complaint against Aeroflex, alleging, *inter alia*, that, as a result of Aeroflex's work with a third party, Aeroflex induced and contributed to infringement of the '384 patent. (*See* D.I. 1) After exchange of the parties' infringement contentions and BAE's revelation that ITT was the third-party that formed the basis of Aeroflex's alleged indirect infringing activities, Aeroflex asserted an affirmative defense pursuant to 28 U.S.C. § 1498 in its March 30, 2010 amended answer. (*See* D.I. 33) Section 1498 operates as an affirmative defense to a claim of patent infringement when the government authorizes and consents to one of its contractors infringing a third party's patent rights. When there has been a proper authorization and consent under § 1498, the patentee's sole recourse is a patent infringement suit against the federal government in the U.S. Court of Federal Claims.

Aeroflex ultimately filed a motion for summary judgment of non-infringement of the '384 patent ("Noninfringement Motion") on February 4, 2011. (D.I. 98) The sole argument advanced by Aeroflex in its motion was that all of its allegedly infringing activities were protected under § 1498, and there were no genuine disputes of material fact that "all of its (and by implication ITT's) conduct involving the accused gimbal assembly was undertaken under the aegis of government sponsorship." (D.I. 248 at 14)

On May 25, 2011, the Court held a Markman hearing in conjunction with oral argument on Aeroflex's Noninfringement Motion, as well as oral argument on BAE's motion for a preliminary injunction. *See* Transcript of May 25, 2011 Hr'g (D.I. 256) (hereinafter "Tr.").

At the May 2011 hearing, the Court denied BAE's preliminary injunction motion. (*See* Tr. at 175; *see also* D.I. 193) While the Court found that BAE had met its burden on the first

three factors (substantial likelihood of success on the merits, irreparable harm, and balance of harms), the Court also concluded that BAE had wholly failed to prove that the public interest favored granting the injunction sought. (*See* Tr. at 175-79) The Court remarked:

> To enjoin Aeroflex from supplying the gimbals to ITT would make it difficult, if not impossible, for ITT to continue to participate in the CIRCM bidding process.
>
> ITT and Aeroflex have worked together for six years to develop and improve this gimbal and its operational capacity within ITT's product. . . . ITT and Aeroflex just may have developed the best or the most affordable version of the antimissile technology the government is seeking to purchase.
>
> The government has initiated a competitive bidding process to select this technology. It follows in the Court's view that absent evidence to the contrary, and here none has been offered by BAE, it follows that the more bids there are, the more likely the government will get the best technology at the best price.
>
> This Court is unwilling to deprive the government of the opportunity to consider the ITT technology which incorporates the Aeroflex gimbal. In this regard, it's important not to lose sight of what is at stake. This is a competition for crucial technology intended to make our Armed Forces as safe and effective as they can possibly be and, in the Court's view, there are few, if any, public interests that are greater than this.
>
> In reaching this conclusion, the Court does not intend to minimize the importance of patent property rights or trade secret rights or contractual rights. However, in that regard, the Court notes that this case will go forward. The Court has found it's likely the plaintiff will succeed on the merits of its breach of contract claim, and, if so, it's quite likely that there will be costs to pay by the defendant as a result.

(Tr. at 177-79)

Subsequently, in its August 2011 Noninfringement Opinion, the Court granted Aeroflex's request for summary judgment on BAE's patent infringement claim, finding that Aeroflex's

4

conduct satisfied the two operative criteria under § 1498; that is, Aeroflex's gimbal use was: (1) "for the Government," and (2) "with the authorization and consent of the Government." (*See, e.g.,* D.I. 248 at 15, 23, 27-28) Consequently, the Court did not construe the claim terms in dispute.

Subsequently, in addressing BAE's remaining state law claims against Aeroflex, the Court found that "the undisputed facts establish that BAE did not file the instant law suit within three years of the later of either discovering its causes of action or after BAE should have discovered, by the exercise of reasonable diligence, its causes of action. BAE's discovery of its causes of action either did or should have occurred no later than September 2006, making its filing of the instant lawsuit in October 2009 untimely." (D.I. 449 at 8) The Court granted summary judgment in favor of Aeroflex on each of BAE's remaining claims. (*See id.* at 15)

## II. PARTIES' CONTENTIONS

### A. Aeroflex

Aeroflex filed its Sanctions Motion against BAE and its counsel on account of their "knowingly frivolous" and "baseless assertion of patent infringement against Aeroflex" in October 2009. (D.I. 246 at 1; *see also generally* D.I. 245; D.I. 246; D.I. 282; D.I. 335) Aeroflex seeks its attorneys fees and costs (i) in bringing its Sanctions Motion pursuant to Fed. R. Civ. P. 11(c)(2), and (ii) in defending the patent infringement claim, including fees and costs related to summary judgment, claim construction, and discovery related to the patent infringement claim, pursuant to Fed. R. Civ. P. 11(c)(4).[3] (*See* D.I. 246 at 18)

---

[3] Aeroflex also requests dismissal with prejudice of the patent infringement count (*see* D.I. 246 at 19), but that request is moot in light of the Court's entry of summary judgment for Aeroflex (D.I. 247).

5

In an exchange of letters in December 2007 and March 2008, respectively, BAE accused Aeroflex of infringing the '384 patent and Aeroflex explained why, in its view, the Aeroflex gimbal did not infringe. (D.I. 176 Ex. 23; D.I. 246 Ex. D) After the Department of Defense ("DOD") announced its Common Infrared Countermeasure System ("CIRCM") procurement program in September 2009 (D.I. 100-7 at ITT 0218), BAE filed this lawsuit in October 2009 (D.I. 1). Aeroflex insists that, in the course of discovery, ITT provided documents "confirming that BAE's infringement claims were untenable," as these documents showed substantive differences between the accused ITT system and the '384 patent. Thereafter, Aeroflex's interrogatory responses and correspondence "warn[ed] BAE that its patent infringement claim lacked merit," yet BAE did not withdraw its infringement claim. (D.I. 246 at 2; *see also id.* at 7-10, 12-18; D.I. 282 at 8)

In particular, Aeroflex asserts patent infringement should never been alleged because "the accused system does *not* have a laser within a rotating housing" (D.I. 282 at 1), although "BAE's patent claims unquestionably require that a laser be in a housing that rotates" (D.I. 335 ¶ 4; *see also* D.I. 282 at 1 (stressing "plain language of the claims unequivocally requires: 1) a housing that rotates; and 2) a laser located within the rotating housing"); *id.* at 4 ("[T]he Rule 11 issue is not that the patent requires that the laser rotate, but rather that the ***housing*** enclosing that laser must rotate.")) Moreover, BAE's doctrine of equivalents assertion improperly and "entirely vitiates elements in the claims, including the elements defined by the 'within the housing' and 'enclosing' claim language." (*Id.* at 7)

Aeroflex denounces BAE's patent infringement claim as "objectively baseless" and "support[ive] [of] a finding of bath faith." (D.I. 335 ¶ 4) Aeroflex further alleges that BAE's

insistence on proceeding with claim construction and patent litigation, as well as its refusal to withdraw its infringement contentions, not only increased defense costs, but harassed Aeroflex and improperly secured BAE a strategic advantage against ITT in bidding on a major contract with the federal government. (*See* D.I. 246 at 3, 10, 12, 17-18; D.I. 282 at 2, 8-10) "That BAE's actions come at a time when it is in competition with ITT for a major award only reinforces the conclusion that sanctions are appropriate to prevent 'improper purpose.'" (D.I. 246 at 17)

### B. BAE

BAE responds that Aeroflex's request for sanctions is "premised on Aeroflex's erroneous belief that not only is its narrow construction of the word 'housing' in the asserted patent claims correct (thereby precluding infringement under any theory according to Aeroflex), but that this is one of the very rare instances where Aeroflex's construction is the only construction that can possibly be argued in good faith." (D.I. 270 at 1) BAE observes that Aeroflex contends that "in terms of the meaning of the 'housing' limitation, it 'has been established [that] BAE's patent claims unquestionably require that a laser be in a housing that rotates[;]'" when, in reality, "this has not been 'established.' This Court has made no claim construction rulings at all. Instead, this is only Aeroflex's *argument* as to the meaning of the limitation." (D.I. 336 at 3-4) BAE further provides evidence that it undertook a thorough pre-suit investigation, which began well before DOD's CIRCM announcement, and based its proposed claim construction on its review of the intrinsic evidence. (D.I. 272, Skenyon Decl. ¶¶ 4-8)

As for why BAE initiated this lawsuit, and specifically the patent infringement claims, BAE asserts it was not "for the 'improper purpose' of harassing Aeroflex and interfering with" ITT's business, but instead "to hold Aeroflex accountable for breaching multiple contracts with

BAE by making and selling BAE's proprietary gimbal assembly containing its valuable trade secrets and the inventions covered by the '384 patent to BAE's competitor." (D.I. 270 at 1; *see id.* at 7-9, 18-20)

### III. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 11(b), an attorney or party "presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it" – certifies that "it is not being presented for any improper purpose, such as to harass . . . or to needlessly increase the cost of litigation," that the claims "are warranted by existing law" or an objectively reasonable argument for a change in existing law, and "the factual contentions have evidentiary support."

In a patent case, the law of the regional circuit applies to the imposition of Rule 11 sanctions. *See Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406-07 (Fed. Cir. 2004). In the Third Circuit, conduct violates Rule 11 if it is not "objectively reasonable under the circumstances." *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010) (internal quotation marks omitted). Frivolous assertions of patent infringement warrant sanctions. *See ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 2007 WL 6137003, at *3 (C.D. Cal. Apr. 16, 2007), *aff'd*, 558 F.3d 1368 (Fed. Cir. 2009).

### IV. DISCUSSION

The primary grounds on which Aeroflex moves for sanctions is that BAE's infringement position was "frivolous" from the start and never should have been brought to court. Aeroflex contends that the only way BAE could assert infringement was based on a frivolous construction of a disputed claim term ("housing") and a theory of infringement under the doctrine of

equivalents that would improperly "vitiate" claim elements. Specifically, while the claims of the '384 patent require a laser in a rotating housing, BAE has known since at least Aeroflex's December 2007 letter that ITT's gimbal assembly does not include a laser in the rotating part of its housing, but instead has a gimbal and laser connected by a fiber optic cable.

Aeroflex has failed to prove that BAE's proposed construction of "housing" – "a structure, which need not be unitary, that encloses the laser and at least one lens" – was not reasonable. While Aeroflex proposed an alternative construction – one which would have required that the housing be unitary[4] – that proves only that there was a dispute, ***not*** that BAE was frivolous in its advocacy. *See generally Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1301 (Fed. Cir. 2004) ("Claim interpretation is not always an exact science, and it is not unusual for parties to offer competing definitions of even the simplest claim language."). The Court is persuaded that BAE had a good faith basis for believing there was literal infringement under its proposed construction. Additionally, even had the Court adopted Aeroflex's construction of "housing," it is far from clear that a finding of infringement under the doctrine of equivalents would be precluded by vitiation. Hence, initiation of this patent infringement lawsuit was not sanctionable.

To the extent Aeroflex is additionally arguing that BAE should be sanctioned for continuing to press its patent infringement claims until the Court granted summary judgment based on the § 1498 defense, the Court disagrees. Because the Court had not construed the claims, nor made any findings regarding infringement or defenses thereto, BAE was within its

---

[4]Aeroflex proposed "a rigid casing that encloses both the laser and the lens means to form a unit rotatable about an axis." (D.I. 122 at 10)

rights to continue to press its non-frivolous infringement theories. The Court is not persuaded that any evidence was produced during discovery, prior to the Court's Noninfringement Order, that should have been recognized by BAE as rendering its infringement case frivolous.[5]

Finally, to the extent Aeroflex contends that BAE's motivation for filing patent infringement claims was so improper as to be sanctionable, the Court is not convinced. Regardless of why BAE brought this case, and notwithstanding Aeroflex's suspicions about timing (suspicions that are arguably corroborated, to some degree, by the Court's ruling with respect to statute of limitations), the fact remains that BAE brought non-frivolous claims following what appears to have been a reasonable investigation. In context, this is not conduct warranting sanction.

In sum, BAE has not pursued objectively unreasonable positions. Accordingly, Aeroflex's Motion for Sanctions will be denied.

V.   **CONCLUSION**

For the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Aeroflex's Sanctions Motion (D.I. 245) is **DENIED**.

2. BAE's Leave Motion (D.I. 291) is **GRANTED**.

UNITED STATES DISTRICT JUDGE

---

[5]As the Court stated in its Noninfringement Opinion, "[t]he inquiry under § 1498 relates to the extent and nature of government involvement, not technical issues of infringement." (D.I. 248 at 13) Likewise, the Limitations Order did not address BAE's remaining state law claims on the merits. (*See* D.I. 449)